**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BANK OF AMERICA, N.A., )
                                      Plaintiff, )     Case No.: 2:17-cv-02566-GMN-DJA
      vs. )
                                             )      **ORDER**
MESA HOMEOWNERS ASSOCIATION, *et al.*, )
                                   Defendants. )

Pending before the Court is Defendant Mesa Homeowners Association's ("HOA's") Motion for Summary Judgment, (ECF No. 96). Plaintiff Bank of America, N.A. ("BANA") filed a Response, (ECF No. 99), and HOA filed a Reply, (ECF No. 101).[1]

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** HOA's Motion for Summary Judgment.

**I.**    **BACKGROUND**

This case arises from the non-judicial foreclosure sale of real property located at 6972 Graceful Cloud Avenue, Henderson, Nevada 89015 (the "Property"). (*See* Deed of Trust ("DOT"), Ex. A to BANA's Resp., ECF No. 99-1). On March 6, 2006, Michael Dyer and Austin Wiseman (together, "Borrowers") obtained a loan from Countrywide Home Loans, Inc. in the amount of $214,967.00, secured by a DOT identifying Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. (*Id.*). The DOT was recorded on March 10, 2006.

---

[1] BANA has not yet filed its own Motion for Summary Judgement, although the Court notes that the parties stipulated to extend the dispositive motions deadline until November 10, 2020. (*See* Order, ECF No. 105).

Page 1 of 10

(*Id.*). MERS then assigned its interest to BANA. (*See* Assignment, Ex. B to BANA's Resp., ECF No. 99-2).[2]

On April 29, 2013, upon Borrowers' failure to stay current on their loan obligations, HOA initiated foreclosure proceedings on the Property through its agent, Alessi & Koenig, LLC ("A&K") by recording a Notice of Delinquent Assessment Lien. (*See* Notice of Delinquent Assessment Lien, Ex. A to HOA's MSJ, ECF No. 96-1). On July 5, 2013, A&K subsequently recorded a Notice of Default and Election to Sell. (Notice of Default, Ex. B to HOA's MSJ, ECF No. 96-2). On January 6, 2014, A&K recorded a Notice of Trustee Sale. (Notice of Trustee Sale, Ex. C to HOA's MSJ, ECF No. 96-3).

On July 31, 2013, BANA, as the servicer of the DOT, through its counsel Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer"), sent a letter to A&K offering to pay the superpriority amount owed on the HOA's lien. (Miles Bauer Aff., Ex. F to BANA's Resp., ECF No. 99-6). A&K responded with a full accounting that itemized the amounts Borrower owed. (*See* Accounting, Ex. 3 to Miles Bauer Aff., ECF No. 99-6). The accounting indicated that nine months of common assessment fees of either $65.00 or $70.00, without any maintenance or nuisance or abatement charges, made the superpriority portion of HOA's lien no more than $630.00. (*See id.*). On November 7, 2013, Miles Bauer tendered $630.00 to A&K on BANA's behalf to "satisfy its Super-Priority Amount obligations to the HOA." (Miles Bauer Letter, Ex. 4 to Miles Bauer Aff., ECF No. 99-6).

Despite Miles Bauer's tender, HOA, through A&K, proceeded with the foreclosure and sold the Property to Defendant SFR Investments Pool 1, LLC ("SFR") for $13,000.00 on February 5, 2014; SFR recorded the foreclosure deed on February 12, 2014. (Foreclosure Deed, Ex. D to HOA's MSJ, ECF No. 96-4). BANA initiated this lawsuit, asserting the following

---

[2] BANA then assigned its interest to Ventures Trust 2013-I-H-R by MCM Capital Partners, LLC, Its Trustee, who then assigned the interest back to BANA. (*See* Assignment, Ex. B to BANA's Resp., ECF No. 99-2).

claims against HOA: (1) declaratory judgment; (2) breach of Nevada Revised Statute 116.1113; and (3) wrongful foreclosure. (First Amended Complaint ("FAC") ¶¶ 45–72, 87–106, ECF No. 77).  HOA previously filed a Motion to Dismiss, which the Court granted in part and denied in part by dismissing BANA's breach of NRS 116.1113 claim and allowing the others to continue. (*See generally* Order, ECF No. 100).  In the instant Motion, (ECF No. 96), HOA seeks summary judgment against BANA's remaining claims.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come

forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the

nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

On April 9, 2019, BANA filed its First Amended Complaint, alleging that HOA's foreclosure "did not extinguish the senior deed of trust recorded against the property." (*See generally* FAC, ECF No. 77); (Resp. Mot. Summ. J. ("Resp.") 2:2–3, ECF No. 99). BANA seeks a declaratory judgment that the DOT still encumbers the Property because the Federal Foreclosure Bar in 12 U.S.C. 4617(j)(3) preempts NRS Chapter 116, NRS Chapter 116 is unconstitutional, and the foreclosure sale was commercially unreasonable. (*See* FAC ¶¶ 45–72). In the alternative, BANA alleges that HOA breached the duty of good faith and fair dealing found in NRS 116.1113 and that the foreclosure sale was wrongful. (*See id.* ¶¶ 88, 94, 98).

HOA filed a Motion to Dismiss BANA's First Amended Complaint on April 23, 2019, arguing: (1) HOA was not a proper party in the suit, (2) the sale was presumptively valid because HOA produced the foreclosure deed, and (3) HOA did not breach the duty of good faith and fair dealing in NRS 116.1113. (*See generally* Mot. Dismiss ("MTD"), ECF No. 80). Before the Court ruled on the Motion to Dismiss, HOA filed the present Motion for Summary Judgment on February 14, 2020, arguing the same. (*See generally* Mot. Summ. J. ("MSJ"),

ECF No. 96). On March 18, 2020, the Court denied in part the Motion to Dismiss, finding that HOA was a proper party and that the sale was not presumptively valid. (*See* Order 5:3–6, 6:1–7). However, the Court granted HOA's Motion to Dismiss with respect to the breach of NRS 116.1113 claim. (*Id.* 8:12–15). For the reasons discussed in its prior Order, and because HOA's Motion for Summary Judgment does not provide any evidence probative of the arguments denied in the Motion to Dismiss, the Court denies the Motion for Summary Judgment with respect to HOA's claims concerning its status as a proper party, the presumed validity of the foreclosure sale, and whether HOA breached NRS 116.1113. Remaining for the Court's consideration are HOA's opposition to BANA's claims for declaratory relief and wrongful foreclosure.

**A. Declaratory Judgment**

BANA's primary arguments for declaratory relief against HOA are threefold. First, the Federal Foreclosure Bar of 12 U.S.C. § 4617(j)(3) prohibited the foreclosure and sale of the Property without permission from the FHFA. (FAC ¶¶ 50–51).[3] Second, NRS Chapter 116 is unconstitutional because it violates BANA's right to procedural due process. (*Id.* ¶ 57). Third, the foreclosure sale did not extinguish the DOT because the sale was commercially unreasonable. (*Id.* ¶ 67).

In its Motion for Summary Judgment, HOA failed to address the merits of BANA's first claim, instead asserting several other defenses, such as the ones disposed of in the Motion to Dismiss, as well as the fact that HOA conducted the foreclosure sale in "strict accordance with

---

[3] Essentially, BANA's argument is that federal law preempts NRS Chapter 116, prohibiting an otherwise valid foreclosure sale. (FAC ¶ 52). At the time of the foreclosure on the Property, the Federal Home Loan Mortgage Corporation ("Freddie Mac") was the actual owner of the property. (FAC ¶ 13). BANA was the beneficiary of record named on the DOT, and by extension, the loan servicer for Freddie Mac. (*Id.* ¶ 19). The Court acknowledges that when Freddie Mac owns a loan at the time of an HOA foreclosure, its property interest is protected by 12 U.S.C. § 4617(j)(3). *See RH Kids, LLC v. MTC Financial*, 367 F. Supp. 3d 1179, 1185 (D. Nev. 2019). Should the HOA conduct a foreclosure sale pursuant to NRS Chapter 116 without Freddie Mac's permission, Freddie Mac's interest in the property will not be extinguished. *Id.* However, as BANA has not yet moved for summary judgment, the court may not grant it declaratory relief in this Order.

Nevada Law." (MSJ 4:10–10:8).  However, even if HOA complied with state law, BANA's main argument for declaratory relief is that 12 U.S.C. § 4617(j)(3) preempts NRS Chapter 116, which HOA has not addressed. (*See* FAC ¶ 49–56); (Reply 2:2–3, ECF No. 101).  Accordingly, the Court cannot grant HOA's Motion for Summary Judgment against BANA's first claim for declaratory relief because HOA effectively concedes that the federal foreclosure bar preserved BANA's DOT.  However, to the extent HOA does respond to BANA's other bases for declaratory judgment, the Court addresses HOA's arguments below.

### i. Constitutionality of NRS 116

BANA argues that "NRS 116's scheme of HOA superpriority foreclosure facially violates the procedural process clauses of the Fourteenth Amendment of the United States Constitution and Article I, Sec. 8, of the Nevada Constitution." (FAC ¶ 64).  However, as HOA points out, it is well established in both the Ninth Circuit and the Nevada Supreme Court that NRS Chapter 116 is not unconstitutional. *See Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 623 (9th. Cir. 2019) ("Nev. Rev. Stat. § 116.3116 *et seq.* is not facially unconstitutional on the basis of an impermissible opt-in notice scheme"); *SFR Invs. Pool I, LLV v. Bank of N.Y. Mellon*, 422 P.3d 1248 (Nev. 2018); (MSJ 5:15–23).  Therefore, the Court grants HOA's Motion for Summary Judgment with respect to BANA's claim that NRS Chapter 116 violates its Fourteenth Amendment due process rights.

### ii. Commercial Reasonability of Sale

BANA claims that the foreclosure sale was commercially unreasonable because the Property was allegedly worth $145,000 at the time of the sale, but SFR purchased it for only $13,000, which is "less than 9% of fair market value." (*See* Resp. 3:25–28, 9:11–13); (Residential Appraisal Summary Report, Ex. H to Resp., ECF No. 99-8).  In *Nationstar Mortg., LLC v. Saticoy Bay LLC Series 2227 Shadow Canyon*, the Nevada Supreme Court established that a low price alone is not enough to set aside a sale for being commercially unreasonable.

1  405 P.3d 641, 648 (Nev. 2017).  In addition to a low price, the challenging party must establish
2  fraud, unfairness, or oppression. *Id.* at 648–650 ("if the district court closely scrutinizes the
3  circumstances of a sale and finds no evidence that the sale was affected by fraud, unfairness, or
4  oppression, then the sale cannot be set aside, regardless of the inadequacy of price").  In its
5  Response, BANA presents no allegations of fraud, unfairness, or oppression in HOA's conduct
6  of the foreclosure sale.  As such, BANA has not established a claim of commercial
7  unreasonableness, and the Court grants HOA's Motion for Summary Judgment with respect to
8  this claim.

9      **B.  Wrongful Foreclosure.**

10  BANA claims that HOA's foreclosure on the Property was wrongful if it extinguished
11  the DOT. (FAC ¶¶ 98–104).  HOA argues that it never "contend[ed]" that BANA's DOT was
12  extinguished, and thus the foreclosure sale could not be wrongful. (*See* MSJ 11:21–22); (Reply
13  4:21–26).  HOA further argues that the sale could not be wrongful because there was a
14  delinquency when HOA foreclosed: Borrowers were in default. (MSJ 12:4–5, 12:11–12).
15  BANA counters that "there was no default in the superpriority amount of the HOA lien,"
16  meaning that there was no delinquency for purposes of wrongful foreclosure on the
17  superpriority portion of the lien. (Resp. 8:23–27).

18  Under NRS 116.3116, the holder of a first DOT may satisfy the superpriority portion of
19  an HOA lien to prevent the foreclosure sale from extinguishing the DOT. *See SFR Invs. Pool 1*
20  *v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014).  The superpriority portion of the lien consists of
21  "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges,"
22  while the subpriority piece consists of "all other HOA fees or assessments." *Id.* at 411;
23  *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 70–74 (Nev.
24  2016).  "[A] first deed of trust holder's unconditional tender of the superpriority amount due
25  results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am.,*

1  *N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc).  In addition to full
2  tender of the superpriority amount, "valid tender must be unconditional, or with conditions on
3  which the tendering party has a right to insist." *Id.*
4        Here, BANA points to evidence indicating that at the time of A&K's recordation of the
5  notice of delinquent assessment lien, the monthly common assessments were either $65.00 or
6  $70.00. (*See* A&K's Ledger, Ex. 3 to Resp., ECF No. 99-6).  Further, the ledger does not
7  indicate that HOA had assessed any maintenance or nuisance abatement charges at the time of
8  BANA's payment. (*Id.*).  Thus, HOA's superpriority lien would be limited to the sum of nine
9  months' common assessments, which total $630.00 when using a $70.00 per month common
10 assessment fee. (*See* Miles Bauer Letter, Ex. 4 to Miles Bauer Aff.).  Finally, BANA has
11 introduced evidence that BANA's agent, Miles Bauer, sent A&K a check for $630.00 to satisfy
12 the superpriority lien, which A&K refused to accept. (*Id.*); (A&K's Confirmation of Receipt,
13 Ex 5. To Resp., ECF No. 99-6).
14       However, BANA claims wrongful foreclosure only in the alternative to its claim that the
15 DOT was not extinguished. (*See* FAC ¶ 98).  HOA's arguments demonstrate that its liability for
16 wrongful foreclosure depends on whether the Court grants BANA declaratory relief that its
17 DOT survived the foreclosure sale.  Given that the Court has not yet granted BANA's claim for
18 declaratory judgment, it is premature to dispose of BANA's alternative claim for relief.
19 Accordingly, the Court denies HOA's motion for Summary Judgment regarding the wrongful
20 foreclosure claim.
21 //
22 //
23 //
24 //
25 //

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant HOA's Motion for Summary Judgment, (ECF No. 96), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that pursuant to the Court's Order Granting BANA and SFR's Joint Motion to Extend Time, (ECF No. 105), the parties shall file a joint pretrial order by December 10, 2020, unless either BANA or SFR files a motion for summary judgment by December 10, 2020.

**DATED** this __9__ day of November, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court